UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-61028-BLOOM

YVES SAINT LAURENT S.A.S.,

    Plaintiff,

v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION
FOR ENTRY OF PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Entry of Preliminary Injunction, ECF No. [10] ("Motion"). The Court has carefully considered the Motion, the record in this case, and the applicable law, and is otherwise fully advised.

Plaintiff Yves Saint Laurent S.A.S. ("Plaintiff") moves for entry of a preliminary injunction against Defendants[1] for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(d). The Court held a hearing by video conference on June 14, 2023, which was attended by counsel for Plaintiff only. During the hearing, Plaintiff directed the Court to evidence supporting the Motion. None of the Defendants formally responded to the Motion, nor have they made any appearance or filing in this case, either individually or through counsel.[2] Because Plaintiff has satisfied the requirements for the issuance of a preliminary injunction, the Court grants the Motion.

---

[1] Defendants are the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A." ECF No. [18].

[2] Plaintiff's counsel was also contacted via email by counsel regarding a possible resolution of the matter on behalf of Defendant Numbers 13, 46, and 53. ECF No. [23] at n.1. However, neither counsel nor Defendants have entered any formal appearance or filed any response with the Court as of this date.

Case No. 23-cv-61028-BLOOM

I. **BACKGROUND**[3]

Plaintiff is the owner of the following trademarks (the "YSL Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office (USPTO):

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| YVES SAINT LAURENT | 0,901,660 | November 3, 1970 | IC 018: handbags. |
| YSL (logo) | 1,711,127 | September 1, 1992 | IC 006: keyholders.<br><br>IC 009: sunglasses, optical frames and cases for glasses.<br><br>IC 014: jewelry, clocks and watches.<br><br>IC 018: handbags, luggage, tote bags, briefcases, wallets, billfolds, change purses, and key fobs.<br><br>IC 025: women's and girls' apparel; namely, dresses, gowns, skirts, slacks, pants, suits, blouses, shirts, sweaters, jeans, neckwear, scarves, belts, sleepwear, underwear, lingerie, robes, camisoles, slips, brassieres, robes, swimwear, beach cover-ups, shoes, slippers, sandals, boots, gloves, hosiery, tights, coats, raincoats, jackets, capes, shawls, fur muffs and headwear; men's and boys apparel; namely, outercoats, raincoats, blazers, sportcoats, vests, suits, pants, jackets, tuxedos, shirts, jeans, sweaters, neckwear, pocket |

---

[3] The factual background is taken from Plaintiff's Amended Complaint, ECF No. [18], Plaintiff's Motion, ECF No. [10], and supporting evidentiary submissions. Plaintiff filed declarations and exhibits annexed thereto in support of its Motion. The declarations are available in the docket at the following entries: ECF Nos. [10-1], [10-2], [10-3]. Plaintiff also filed a Notice of Identification of Additional Financial Accounts Used by Defendant Number 14. ECF No. [17].

2

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | | | squares, pajamas, night shirts, robes, bath wraps, shoes, sandals, slippers, hosiery, socks, gloves, scarves, hats, swimwear, belts and suspenders. |
| YVES SAINT LAURENT | 1,712,998 | September 8, 1992 | IC 006: keyholders.<br><br>IC 009: sunglasses, optical frames and cases for glasses.<br><br>IC 014: jewelry, clocks and watches.<br><br>IC 018: handbags, luggage, tote bags, briefcases, wallets, billfolds, change purses and key fobs.<br><br>IC 025: women's and girl's apparel; namely, dresses, gowns, skirts, slacks, pants, suits, blouses, shirts, sweaters, jeans, neckwear, scarves, belts, sleepwear, underwear, lingerie, robes, camisoles, slips, brassieres, robes, swimwear, beach cover-ups, shoes, slippers, sandals, gloves, hosiery, tights, leotards, leg warmers, coats, raincoats, jackets, capes, shawls, fur muffs and headwear; men's and boys' apparel; namely, outercoats, raincoats, blazers, sportcoats, vests, suits, pants, dinner jackets, jackets, tuxedos, shirts, jeans, sweaters, neckwear, pocket squares, pajamas, night shirts, robes, bath wraps, shoes, boots, sandals, slippers, hosiery, socks, gloves, scarves, hats, swimwear, belts and suspenders. |
| YSL | 1,712,999 | September 8, 1992 | IC 006: keyholders. |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | | | IC 009: sunglasses, optical frames and cases for glasses.<br><br>IC 014: jewelry, clocks and watches.<br><br>IC 018: handbags, luggage, tote bags, briefcases, wallets, billfolds, change purses, and key fobs.<br><br>IC 025: women's and girl's apparel; namely, dresses, gowns, skirts, slacks, pants, suits, blouses, shirts, sweaters, jeans, neckwear, scarves, belts, sleepwear, underwear, lingerie, robes, camisoles, slips, brassieres, robes, swimwear, beach cover-ups, shoes, slippers, sandals, boots, gloves, hosiery, tights, coats, raincoats, jackets, capes, shawls, fur muffs and headwear; men's and boy's apparel; namely, outercoats, raincoats, blazers, sportcoats, vests, suits, pants, jackets, tuxedos, shirts, jeans, sweaters, neckwear, pocket squares, pajamas, night shirts, robes, bath wraps, shoes, sandals, slippers, hosiery, socks, gloves, scarves, hats, swimwear, belts and suspenders. |
| YVESSAINTLAURENT | 1,745,483 | January 12, 1993 | IC 006: keyholders and metal pillboxes.<br><br>IC 009: sunglasses, optical frames and cases for glasses.<br><br>IC 014: jewelry, clocks and watches.<br><br>IC 016: stationery; namely, pens, pencils and playing cards. |

4

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | | | IC 018: handbags, luggage, tote bags, briefcases, wallets, billfolds, change purses.<br><br>IC 025: women's and girl's apparel; namely, dresses, gowns, skirts, slacks, pants, suits, blouses, shirts, sweaters, jeans, neckwear, scarves, belts, sleepwear, underwear, lingerie, robes, camisoles, slips, brassieres, robes, swimwear, beach cover-ups, shoes, slippers, sandals, gloves, hosiery, tights, leotards, coats, raincoats, jackets, capes, shawls, fur muffs and headwear; men's and boys apparel; namely, outercoats, raincoats, blazers, sportcoats, vests, suits, pants, dinner jackets, jackets, tuxedos, shirts, jeans, sweaters, neckwear, pocket squares, pajamas, night shirts, robes, bath wraps, shoes, boots, sandals, slippers, hosiery, socks, gloves, scarves, hats, swimwear, belts and suspenders. |
| **SAINT LAURENT**<br>PARIS | 5,195,857 | May 2, 2017 | IC 009: sunglasses; accessories for telephones, mobile telephones, smartphones, video phones, tablet computers, PDAs (personal digital assistants) and MP3 players, namely, covers, cases, cases and covers for portable computers, covers; USB flash drives.<br><br>IC 014: precious metals and their alloys; jewellery of alloys and plated, namely, rings, earrings, cuff links, bracelets, brooches, pendants, charms, chains and watch chains, necklaces, medals, |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | | | medallions; semi-precious stones: jewellery cases.<br><br>IC 018: leather and imitations of leather, animal skins and imitation animal skins; leather goods and imitation of leather goods, namely, handbags, shoulder bags, messenger bags, tote bags, luggage, wallets, purses, notecard cases, briefcases, attaché cases, school bags, school satchels, beach bags, bags for sports, belt bags, sling bags for travel, suitcases, trunks, travelling bags, rucksacks, shopping bags, clutch bags, pouches; vanity cases sold empty, toiletry bags sold empty, garment bags for travel, travelling sets, namely, coordinated luggage sets for travel, key cases in leather.<br><br>IC 025: men's, women's and children's clothing, namely, suits, coats, jackets, pants, shirts, raincoats, sweatsuits, underwear, pullovers, knit shirts, and under garments; evening wear, namely, evening dresses, evening gowns, evening wraps, tuxedos, blazers, and three-quarter coats; hosiery, namely, socks and stockings; knitwear clothing, namely, sweaters, knitted underwear, and knit caps; sportswear, namely, sports shirts, sport jerseys, sport pants; clothing accessories, namely, suspenders, ties, bow ties, and scarves; belts for clothing; gloves; footwear and headwear. |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| SAINT LAURENT | 5,266,193 | August 15, 2017 | IC 009: sunglasses; accessories for telephones, mobile telephones, smartphones, video phones, tablet computers, PDAs (personal digital assistants) and MP3 players, namely, covers, cases, cases and covers for portable computers, covers; USB flash drives.<br><br>IC 014: precious metals and their alloys; jewellery of alloys and plated, namely, rings, earrings, cuff links, bracelets, brooches, pendants, charms, chains and watch chains, necklaces, medals, medallions; semi-precious stones: jewellery cases.<br><br>IC 018: leather and imitations of leather, animal skins and imitation animal skins; leather goods and imitation of leather goods, namely, handbags, shoulder bags, messenger bags, tote bags, luggage, wallets, purses, notecard cases, briefcases, attaché cases, school bags, school satchels, beach bags, bags for sports, belt bags, sling bags for travel, suitcases, trunks, travelling bags, rucksacks, shopping bags, clutch bags, pouches; vanity cases sold empty, toiletry bags sold empty, garment bags for travel, travelling sets, namely, coordinated luggage sets for travel, key cases in leather.<br><br>IC 025: men's, women's and children's clothing, namely, suits, coats, jackets, pants, shirts, raincoats, sweatsuits, underwear, pullovers, knit shirts, and under |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | | | garments; evening wear, namely, evening dresses, evening gowns, evening wraps, tuxedos, blazers, and three-quarter coats; hosiery, namely, socks and stockings; knitwear clothing, namely, sweaters, knitted underwear, and knit caps; sportswear, namely, sports shirts, sport jerseys, sport pants; clothing accessories, namely, suspenders, ties, bow ties, and scarves; belts for clothing; gloves; footwear and headwear. |

*See* Declaration of Courtney Brown, ECF No. [10-1] ¶ 4; ECF No. [18-1] (containing Certificates of Registrations for the YSL Marks at issue). The YSL Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See* Declaration of Courtney Brown, ECF No. [10-1] ¶¶ 4-5.

Defendants, by operating the Internet based e-commerce stores under the seller names identified on Schedule "A" (the "E-commerce Store Names"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the YSL Marks. *See* Declaration of Courtney Brown, ECF No. [10-1] ¶¶ 9-13; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [10-2] ¶ 2; Declaration of Kathleen Burns, ECF No. [10-3] ¶ 4; Declaration of Kathleen Burns in Support of Plaintiff's Notice of Identification of Additional Financial Accounts Used by Defendant Number 14, ECF No. [17-1] ¶ 5.

Although each Defendant may not copy and infringe each YSL Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing that each Defendant has infringed at least one or more of the YSL Marks. *See* Declaration of Courtney Brown, ECF No.

[10-1] ¶¶ 9-13. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the YSL Marks. *See* Declaration of Courtney Brown, ECF No. [10-1] ¶¶ 9, 12-13.

Plaintiff's counsel retained Invisible Inc, a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiff's products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiff's branded products. *See* Declaration of Courtney Brown, ECF No. [10-1] ¶ 10; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [10-2] ¶ 2; Declaration of Kathleen Burns, ECF No. [10-3] ¶ 3. Invisible Inc accessed the Internet based e-commerce stores operating under each of Defendants' E-commerce Store Names and placed orders from each Defendant for the purchase of various products, all bearing and/or using counterfeits of, at least, one of Plaintiff's trademarks at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See* Declaration of Kathleen Burns, ECF No. [10-3] ¶ 4 and Comp. Ex. 1 thereto, ECF Nos. [10-4] – [10-8]. Each order was processed entirely online[4] and following the submission of the orders, Invisible Inc received information for finalizing payment[5] for the various products ordered to their respective payment account, identified on Schedule "A."[6] *See id.* At the conclusion of the process, the detailed web page captures and images of the various products bearing and/or using the YSL Marks ordered via

---

[4] Certain Defendants use their E-commerce Store Names in tandem with image hosting websites and electronic communication via private messaging applications and/or services to complete their offer and sale of counterfeit and infringing Saint Laurent-branded products. *See* Declaration of Kathleen Burns, ECF No. [10-3] ¶ 4, n.1.

[5] Invisible Inc was instructed to not transmit the funds to finalize the sale for some of the orders from Defendants so as to avoid adding money to Defendants' coffers. *See* Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [10-2] ¶ 2 n.1; Declaration of Kathleen Burns, ECF No. [10-3] ¶ 4 n.2.

[6] Certain Defendants also provided contact e-mail addresses in connection with their E-commerce Store Names, which are included on Schedule "A" hereto. *See* Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [10-2] at 3; Declaration of Kathleen Burns, ECF No. [10-3] at 4 n.2.

Defendants' E-commerce Store Names were sent to Plaintiff's representative for inspection. *See* Declaration of Courtney Brown, ECF No. [10-1] ¶ 11; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [10-2] ¶ 2; Declaration of Kathleen Burns, ECF No. [10-3] ¶ 4.

Plaintiff's representative reviewed and visually inspected the products bearing and/or using the YSL Marks ordered and purchased by Invisible Inc and determined the products were not genuine versions of Plaintiff's goods. *See* Declaration of Courtney Brown, ECF No. [10-1] ¶¶ 12-13.

On June 1, 2023, Plaintiff filed its Complaint, ECF No. [1], and thereafter its Amended Complaint on June 6, 2023, ECF No. [18], against Defendants for trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement. On June 2, 2023, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [10]. On June 2, 2023, this Court entered a Temporary Restraining Order, and temporarily restrained Defendants from infringing the YSL Marks at issue. *See* ECF No. [12]. The Temporary Restraining Order also directed PayPal, Inc. ("PayPal"), and Stripe, Inc. ("Stripe") to identify and restrain funds in payment accounts associated with Defendants and to divert those funds to a holding account. Pursuant to the Court's June 2, 2023 Order, Plaintiff served Defendants with a copy of the Amended Complaint together with copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, and the Court's June 2, 2023 Temporary Restraining Order, thereby providing notice and copies of the June 2, 2023 Temporary Restraining Order and Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets via email to each Defendant's corresponding email/online contact form, and by posting

copies of the Temporary Restraining Order and all other pleadings and documents on file in this action on the website located at https://servingnotice.com/YSmQMe2/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant, ECF Nos. [20]-[21].

## II.     LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995).

## III.    DISCUSSION

The declarations Plaintiff submitted in support of its Motion support the following conclusions of law:

A.     Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sales, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the YSL Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear and/or use copies of the YSL Marks;

B.     Because of the infringement of the YSL Marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. It appears from the following specific facts, as set forth in Plaintiff's Amended Complaint, Motion, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers because it is more likely true than not that:

        1.       Defendants own or control Internet based e-commerce stores operating under their E-commerce Store Names which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiff's rights; and

        2.       There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products.

       C.       The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation and goodwill as a manufacturer and distributor of quality products, if such relief is not issued.

       D.       The public interest favors issuance of the preliminary injunction to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

       E.       Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of the YSL Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

       F.       Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of

permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Comm'n v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

      G.    Considering the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that, pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and the Court's inherent authority, Plaintiff's Motion, **ECF No. [10]**, is **GRANTED** as follows:

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are enjoined and restrained until further Order of this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the YSL Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the YSL Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the YSL Marks, or any confusingly similar trademarks; or (iii) any assets or other

        financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

2.     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the YSL Marks or any confusingly similar trademarks, on or in connection with all e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the E-commerce Store Names;

3.     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the YSL Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to e-commerce stores registered, owned, or operated by any Defendant, including the e-commerce stores operating under the E-commerce Store Names;

4.     Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the E-commerce Store Names and shall take all steps necessary to retrieve computer files relating to the use of the E-commerce Store Names that may have been deleted before the entry of this Order;

5. Upon Plaintiff's request, the privacy protection service for any of the E-commerce Store Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information for those registrants;

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and Stripe, Inc. ("Stripe") and their related companies and affiliates shall immediately, to the extent not already done, (i) identify all financial accounts and/or sub-accounts, associated with the Internet e-commerce stores operating under the E-commerce Store Names, payees, merchant identification numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) divert those restrained funds to a holding account for the trust of the Court;

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Stripe, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by

this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, PayPal and Stripe, and their related companies and affiliates for any purpose (other than pursuant to a purchase refund chargeback made by a consumer) without the express authorization of this Court;

8. This Order shall apply to the E-commerce Store Names, associated e-commerce stores, and any other seller identification names, e-commerce stores, or financial accounts which are being used by Defendants for the purpose of counterfeiting the YSL Marks and/or unfairly competing with the Plaintiff;

9. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

10. As a matter of law, this Order shall no longer apply to any Defendant or associated e-commerce store dismissed from this action, or as to which Plaintiff has withdrawn its request for a preliminary injunction;

11. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

12. Additionally, for the purpose of providing additional notice of this proceeding and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the e-commerce stores, and/or financial institutions, payment processors, banks, escrow services, and money transmitters, and marketplace platforms, including but not limited to PayPal,

Case No. 23-cv-61028-BLOOM

Stripe, and their related companies and affiliates, shall, to the extent not already done, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective E-commerce Store Names; and

13. This Order shall remain in effect during the pendency of this action, or until further Order of this Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 14, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record